UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DANESHWAR PERSAUD,          )
                                   )
         Plaintiff,          )
                                   )
      v.                    )             1:25-cv-307-JAW-KFW
                                   )
UNIVERSITY OF RHODE ISLAND,  )
*et al.*                           )
                                   )
         Defendants.     )

**ORDER ON MOTION TO DISMISS AND SUA SPONTE DISMISSAL**

A pro se plaintiff filed a prolix and unwieldly complaint against more than two dozen defendants for more than two dozen claims, yet he served only four defendants, failed to number the paragraphs in the complaint, and has yet to state with particularity a claim on which relief can be granted. The four served defendants filed a motion to dismiss. After reviewing the complaint and the parties' submissions, the court grants the defendants' motion to dismiss as to the unsupported conspiratorial claims against the four moving defendants. In addition, because in its review of the complaint confirmed conspiratorial, unsupported, and scandalous allegations against defendants other than the university defendants, the Court sua sponte dismisses the complaint against all defendants except the university defendants. The court denies the defendants' motion to dismiss as to several claims related to discrimination and retaliation but orders the plaintiff to file an amended complaint compliant with the federal rules of civil procedure within two weeks of this order. The court defers ruling on the plaintiff's pending motion for extension of time to complete service, denies his

motion for order directing service by U.S. Marshal, and dismisses his notice of service to the extent the filing requests a court order—it is otherwise retained on the docket.

## I.    PROCEDURAL HISTORY

On June 30, 2025, Daneshwar (Dan) Persaud, acting pro se, filed a civil action in this Court against the University of Rhode Island (URI) and twenty-two additional defendants,[1] including the state of Rhode Island pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964), the Rhode Island Whistleblowers Protection Act, the Rhode Island Civil Rights Act, and the Rhode Island Fair Employment Practices Act, alleging that the Defendants violated his rights in various ways and demanding declaratory and injunctive relief and damages. *Compl.* (ECF No. 1).  Mr. Persaud has had difficulty completing service of process on the Defendants; however, on March 20, 2026 and March 23, 2026, Attorneys Matthew Thomas Oliviero and Gina Maria Renzulli Lemay respectively entered their appearances on behalf of Defendants Alyssa Boss, Gabriele Fariello, Michael Motta, and Robert Viens, each employed by URI (collectively URI Defendants).  *Notices of Appearance* (ECF Nos. 28, 29).

On March 30, 2026, the URI Defendants filed a motion to dismiss Mr. Persaud's complaint.  *Mot. to Dismiss* (ECF No. 30) (*Defs.' Mot.*).  On March 31, 2026

---

[1]    Although not named in the case caption or the body of the complaint, Mr. Persuad lists Chief Judge Jack McConnell of the United States District Court for the District of Rhode Island as Defendant 24.  *Compl.* at 3.  In the complaint, however, Mr. Persuad explains that he is not suing Chief Judge McConnell because he is protected by absolute judicial immunity; however, he is referring the Chief Judge to the Department of Justice and to Congress.  *Id.* at 91.

Mr. Persaud also lists numerous individuals in the complaint who are not named as parties. *Id.* at 18-100.

and April 13, 2026, Mr. Persaud filed his opposition. *Pl.'s Opp'n to Defs. Boss, Motta, Fariello, and Viens' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 8, 10, 11, and 12(b)(6)* (ECF No. 31) (*Pl.'s First Opp'n*); *Pl.'s Obj. to Defs. Boss, Motta, Fariello, and Viens' Mot. to Dismiss* (ECF No. 32) (*Pl.'s Second Opp'n*). The URI Defendants' reply was due by April 7, 2026, but they did not file a reply.

On May 15, 2026, each of the district judges in the District of Rhode Island recused themselves from this matter, and Chief Judge McConnell ordered that the matter be referred to the District of Maine and assigned to a judge who would sit by designation in Rhode Island. *Order of Ct.* (ECF No. 33). On May 18, 2026, Chief Judge Lance Walker concurred with Chief Judge McConnell's request and assigned this Judge and United States Magistrate Judge Karen Frink Wolf to serve in the District of Rhode Island by designation. *Concurring Order* (ECF No. 34).

## II. THE POSITIONS OF THE PARTIES

### A. The Defendants' Motion to Dismiss

The URI Defendants' overall criticism of Mr. Persaud's complaint is that it is "a 205-page narrative, which Defendants cannot weed through in order to ascertain which claims are being asserted and against whom they are being asserted." *Defs.' Mot.* at 2. The Defendants maintain that Mr. Persaud's failure to comply with procedural rules makes it "impossible for these Defendants to match his alleged incidents with defendants or counts" and they say that as a result, they "cannot effectively respond to Plaintiff's narrative and assert their defenses in this matter, nor can they discern the plausibility of Plaintiff's claims." *Id.* at 3.

3

With this backdrop, the URI Defendants point to Mr. Persaud's failure to comply with Federal Rule of Civil Procedure 8's requirement of a "short and plain" statement of the claim, *id.* at 3-8, they assert that the complaint includes immaterial and scandalous allegations, *id.* at 8-11, they argue that Mr. Persaud has not complied with Rule 10(b)'s requirement of numbered paragraphs, *id.* at 11-13, they view Mr. Persaud's complaint as "vexatious litigation" and urge its dismissal on that basis, *id.* at 13-16, and lastly, they maintain that the complaint is so unintelligible and convoluted that it should be dismissed. *Id.* at 16-18.

### B.    The Plaintiff's Opposition

Mr. Persaud responds that the complaint should not be dismissed because it "details a coordinated campaign of ***racial discrimination, retaliation for protected speech and whistleblowing, and conspiracy involving URI officials***, including the Moving Defendants." *Pl.'s First Opp'n* at 1 (emphasis in original).  After reviewing the need for leniency in reviewing pro se pleadings, Mr. Persaud insists that the structure of his complaint "provides fair notice." *Id.* at 2.  Mr. Persaud then lists facts he has alleged against each of the URI Defendants. *Id.* at 3.  Mr. Persaud disputes the URI Defendants' Rule 10(b) contention, *id.* at 3, he rejects the implication that the Court should impose Rule 11 sanctions, *id.* at 3-4, and he argues that his complaint alleges plausible claims of retaliation for protected speech, racial discrimination and hostile work environment, conspiracy and RICO, and due process and equal protection violations tied to the raid and termination. *Id.* at 4.  In his second opposition, Mr. Persaud asks that if his current complaint is deemed

4

technically insufficient, he be given leave to amend his complaint, rather than face dismissal. *Pl.'s Second Opp'n* at 1.

### III.    PLAINTIFF'S COMPLAINT

A word about the structure of Mr. Persaud's complaint.[2]    Mr. Persaud's complaint contains 205 pages under the ECF pagination. *See Compl.* at 1-205. It begins with a three-page table of contents, *id.* at 2-4, continues with a list of forty-seven exhibits, *id.* at 5-8, and then contains 196 pages of allegations. *Id.* at 9-205. With some intermittent exceptions, Mr. Persaud has not made his allegations in numbered paragraphs but instead sets them forth in a narrative.

#### A.    Summary

Mr. Persaud begins his complaint with the following summary:

> This case—*Daneshwar Persaud v. University of Rhode Island et al.*—will be seminal because it exposes the extreme and unlawful measures taken by powerful Democratic Party operatives and corrupt jurists to silence whistleblowers and suppress the truth.  It reveals the weaponization of civil rights principles—not to protect the marginalized, but to shield those in power from accountability.  At its core, this case involves the willful and conspiratorial abuse of state power—and of the University of Rhode Island—to silence Dan Persaud using a militarized, excessive-force police raid coordinated by officials appointed by the Democratic Party, against the backdrop of gross judicial misconduct already perpetrated by Chief Judge John McConnell against the Persaud family.  McConnell's pattern of bias and procedural impropriety in several cases has undermined the integrity of the federal bench.  This misconduct has been further shielded by the calculated inaction of Rhode Island's Attorney General, Peter Neronha—a deeply corrupt public official who masquerades as a "crime fighter" while weaponizing prosecutorial discretion to obstruct accountability and shield political allies responsible for egregious civil rights violations.  Together, these actors orchestrated a retaliatory campaign against an American for

---

[2]    There is a variance between the pagination of Mr. Persaud's complaint and the pagination of the ECF filing.  The Court has cited the ECF pagination.

lawfully exercising his First Amendment rights, in brazen violation of constitutional protections and the rule of law.

*Id.* at 10.

### B.    Introduction

Mr. Persaud is an American of Black and South Asian descent. *Id.* URI hired him on July 1, 2012 as Senior Information Technologist to work in the Media and Technology Services Department. *Id.* Mr. Persaud says that during his decades-long employment at URI, he has been subjected to "systematic racial discrimination, harassment, oppressive HR and fraudulent DEI employment practices, and retaliation." *Id.* Mr. Persaud says that he has a demonstrably superior education to his boss, Bob Viens, who is a white male and who holds only a bachelor's degree in computer science. *Id.* at 10-11.

Mr. Persaud says that during his employment, he was "repeatedly denied promotions, subjected to harassment in a hostile and toxic work environment, and deliberately moved from one work area to another without proper facilities or equipment to perform his job." *Id.* at 11. Mr. Persaud alleges that he "was denied salary increases despite his high qualifications, to permanently silence his complaints." *Id.* Mr. Persaud states that he "was ultimately subjected to false accusations regarding equipment valued at $237 as a means to terminate his employment." *Id.* Mr. Persaud says that due to false allegations, he was "removed from URI and placed on administrative leave on August 26, 2024, pending the outcome of a pretextual criminal investigation concerning electronic equipment valued at $237." *Id.* Mr. Persaud alleges that in "a shocking abuse of Dan Persaud's

civil rights, the [URI], acting in concert with state officials, orchestrated a militarized raid on American Dan Persaud's home with weapons drawn—an act carried out with the unchecked impunity of a monarchy, now embodied by the Democratic Party in Rhode Island and nationally, rather than the accountability expected in a constitutional democracy." *Id.* at 12.

Mr. Persaud claims that the "weight of this injustice—compounded by the betrayal of judicial integrity—caused Mr. Dan Persaud to have such intense stress and anguish that it culminated in a massive heart attack on June 21, 2025, just after he completed work on this very federal complaint.  Plaintiff Dan Persaud was rushed by ambulance to Kent Hospital in critical condition." *Id.* at 13.

C.      **A Summary of the Allegations**

After the introduction, what follows over the next nearly two hundred pages is a cascade of serious accusations against a wide range of public figures in Rhode Island.  Mr. Persaud levels charges of corruption against federal and state judges, state and university police, trustees and employees of URI, elected political leaders, and others, and alleges that they engaged in a decade-long conspiracy against him because of his race and his outspoken views.  Mr. Persaud starts with the commencement of his employment at URI and says that URI systematically discriminated against him from July 1, 2012 by refusing to promote him, freezing his wages, and instead hiring and promoting less qualified white men. *Id.* at 12, 92-103. Mr. Persaud says that this discrimination culminated in his being placed on administrative leave and being forbidden access to the URI campus on August 26, 2024. *Id.* at 11, 18, 67, 113-119.

Mr. Persaud focuses significant indignation against the warranted search of his residence on August 26, 2024. *Id.* 17, 19, 113-116. He claims that acting in collusion with URI, Magistrate Joseph P. Ippolito—affiliated with Chief Judge John McConnell—signed the warrant without probable cause authorizing the URI Police and Rhode Island State Police to conduct a malicious, excessive-force raid of Plaintiff's home, during which officers drew their guns and used a battering ram to blow the door off its hinges. *Id.* at 13, 78, 83, 116-116. Mr. Persaud alleges that Magistrate Ippolito is corrupt and issued the search warrant based on false information and without probable cause because URI suspected that Mr. Persaud had stolen $237 worth of URI equipment. *Id.* at 13, 19-20, 68. Mr. Persaud disputes that the URI equipment in his residence was fairly valued at $237. *Id.* at 30, 68, 76. Then, he says that the state police, who executed the search warrant, failed to turn on their body cameras, even though some troopers were wearing them, and that their failure to do so violated state policy. *Id.* at 19, 21-22, 79-84, 115-116. Mr. Persaud attaches photographs of his mother Ms. Rookmin Persaud, *Compl.*, Attach. 9, *Ex. 8* (*Photos of Pl.'s Mother's Injuries*), and he claims law enforcement assaulted her while executing the search warrant. *Compl.* at 21. Mr. Persaud maintains that "this malicious violation of his rights by URI and the state of Rhode Island was a retaliatory act in response to his opposition to the university's discriminatory and fraudulent employment practices, its anti-meritocratic DEI culture, nepotism, and race-based discrimination against a hardworking American who refuses to submit to the

8

pervasive coercion and abuse carried out by URI officials protected by a very corrupt Attorney General and judiciary." *Id.* at 23.

Mr. Persaud makes numerous allegations against URI employees, which center on URI's Diversity, Equity and Inclusion (DEI) program and what he contends is its misapplication at URI. Mr. Persaud alleges that "leaders and officials of the Democratic Party have distorted [Dr. Martin Luther King's] legacy, reducing it to symbolism while promoting repressive policies under the guise of 'Diversity, Equity, and Inclusion (DEI)' that, in practice, silence protected speech, undermine merit, and cultivate systemic employment fraud and nepotism at URI and in Rhode Island." *Id.* at 12. Mr. Persaud says he has spoken out against URI's fraudulent DEI practices. Mr. Persaud describes the URI DEI program as perpetrating fraudulent DEI employment practices controlled by white liberals, referring to an all-white, all-female DEI committee at URI, which – he says – "governs by intimidation, enforcing egregious policies through intimation." *Id.* at 35.

Mr. Persaud makes direct allegations against numerous URI employees and officers, including URI Board Chair Margo Cook, stating that

> Ms. Cook has been untouchable, protected in the federal courts by Chief Judge John McConnell and by the State of Rhode Island through Attorney General Peter Neronha. Ms. Margo Cook will continue to remain untouchable, presiding over a bigoted DEI office and discriminatory hiring practices, unless the DOJ and FBI intervene with a full-scale criminal investigation and suspend federal aid until the DEI office is shut down and those responsible are prosecuted and removed from office for persistent abuses.

*Id.* at 59.

9

In his complaint, Mr. Persaud lists twenty-one counts: (1) Count One—violation of his First Amendment right to freedom of speech, (2) Count Two—conspiracy to violate his Fourth Amendment rights, (3) Count Three—retaliation against a witness in a federal proceeding, (4) Count Four—violation of his Fourteenth Amendment right to equal protection, (5) Count Five—violation of his Fourteen Amendment right to procedural due process, (6) Count Six—defamation, (7) Count Seven—violation of the Rhode Island Whistleblower Protection Act, (8) Count Eight—Title VI violations: discrimination in federally funded programs, (9) Count Nine—Title VII violations: discrimination in federally funded programs; (10) Count Ten—racial discrimination in violation of Title VII of the Civil Rights Act of 1964, (11) Count Eleven—retaliation in violation of state and federal law, (12) Count Twelve—violation of the Rhode Island Civil Rights Act, (13) Count Thirteen—discrimination in violation of the Rhode Island Fair Employment Practices Act, (14) Count Fourteen—conspiracy to suborn perjury, (15) Count Fifteen—conspiracy to interfere with Civil Rights, including witness intimidation and obstruction of justice, (16) Count Sixteen—violation of his equal rights under the law, (17) Count Seventeen—conspiracy against rights, (18) Count Eighteen—conspiracy to commit offense against or defraud the United States, (19) Count Nineteen—hate crime motivated by race and retaliation for protected First Amendment speech, (20) Count Twenty—stand alone charge of fraud and deceit against URI officials: scienter based charge arising from prolonged institutional misconduct, and (21) Count Twenty-One—civil RICO charges. *Id.* at 119-199.

10

Mr. Persaud demands (1) $27,000,000 in damages, (2) a federal investigation into his allegations of prosecutorial misconduct and constitutional violations, (3) a judicial finding that URI officials are liable for fraud and deceit, (4) a judicial declaration that the defendants violated his rights under the First, Fourth, and Fourteen Amendments by retaliating against him for engaging in protected speech, (5) a judicial declaration that the defendants violated Title VII of the Civil Rights Act of 1964 by engaging in unlawful employment discrimination and retaliation, (6) a judicial declaration that the defendants engaged in intentional discrimination, retaliation, and a hate crime, and (7) injunctive relief to order URI officials to cease retaliation against him and to restore meritocracy at URI.  *Id.* 200-204.

## IV.    LEGAL STANDARDS

### A.    Alleged Violations of Rules 8, 10, 11 and 12(f)

The URI Defendants claim that Mr. Persaud's complaint violates several rules of civil procedure, specifically Rules 8, 10, 11, and 12(f).  Rule 8(a)(2) mandates that a complaint contain a "short and plain statement of the claim."  FED. R. CIV. P. 8(a)(2). Rule 10(b) requires that a complaint "must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  FED. R. CIV. P. 10(b).  Rule 11(b) stipulates that the filer of a complaint, including a pro se litigant, makes representations that the factual allegations have evidentiary support, that the legal contentions are warranted and non-frivolous, and that the complaint is not being filed for any improper purpose.  FED. R. CIV. P. 11(b).  Rule 12(f) allows a party to move a court to strike "any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).

The Court of Appeals for the First Circuit affirmed the striking of a complaint where the allegations are "argumentative, prolix, redundant, and verbose." *McCoy v. Providence Journal Co.*, 190 F.2d 760, 766 (1st Cir. 1951). In the words of the *McCoy* Court, "[i]t is hard to imagine a pleading more completely at variance with both the letter and the spirit of Rule 8[(d)](1) which requires that each averment of a pleading be 'simple, concise, and direct.'" *Id.* (quoting FED. R. CIV. P. 8(d)(1)). Similarly, the Massachusetts District Court struck a complaint in its entirety for failing to comply with Rule 8(a) and Rule 8(d)(1) when it was "the complete antithesis of the type of complaint contemplated by Rule 8(a)(2)." *Martin v. Hunt*, 28 F.R.D. 35, 36 (D. Mass. 1961).

The URI Defendants have also argued that the complaint should be struck in its entirety under Rule 12(f). It is true that "[m]otions to strike under Federal Rule of Civil Procedure 12(f) are viewed with disfavor and are infrequently granted." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) (citing 5 WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1380 (1st ed. 1969) (WRIGHT & MILLER). However, motions to strike under Rule 12(f) have been granted when "the presence of the surplusage will prejudice the adverse party." *FTC v. Hope Now Modifications, LLC*, No. CIV. 09-1204 JBS/JS, 2011 U.S. Dist. LEXIS 24657 (D.N.J. Mar. 10, 2011) (citing *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009)). "A court has considerable discretion in striking 'any redundant, immaterial, impertinent, or scandalous matter.'" *Alvarado-Morales v.*

*Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir. 1988) (quoting FED. R. CIV. P. 12(f)).

In addition, "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations," especially when the subject of the allegations is the integrity of the judiciary.  5C WRIGHT & MILLER § 1382 (3d ed. Supp. 2026); *see also Skolnick v. Hallett*, 350 F.2d 861, 862 (7th Cir. 1965) (striking a complaint in which plaintiff alleges that defendants conducted a 'kangaroo court' with him as a victim); *In re Moody*, 105 B.R. 368, 270-71 (S.D. Tex. 1989) (striking a complaint in which plaintiff "frequently veers off the course . . . to indulge in scurrilous, quasi-paranoidal personal attacks on various federal and state judges, parties and attorneys in this action and third parties" as a "graphic violation[]" of Rule 12(f)).

Finally, "[a] court has considerable discretion in striking 'any redundant, immaterial, impertinent or scandalous matter." *Alvarado-Morales*, 843 F.2d at 618.

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

13

facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (first quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); and then quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.  DISCUSSION

### A.  Failure to Serve Defendants

14

Mr. Persaud filed his complaint in this Court on June 30, 2025. *Compl.* Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). The URI Defendants observe that Mr. Persaud has served only four URI Defendants. *Defs.' Mot.* at 2. The Rule allows a court to extend the time for service when the plaintiff demonstrates good cause for his failure to make timely service. FED. R. CIV. P. 4(m).

On October 24, 2025, District Judge Mary S. McElroy issued an order to show cause, noting Mr. Persaud's failure to make timely service and ordering him to show cause within one week as to why the complaint should not be dismissed for lack of diligent prosecution. *O.S.C.* (ECF No. 7). On October 31, 2025, Mr. Persaud responded to Judge McElroy's order. *Daneshwar Persaud, Pl., Resp. to Judge Mary S. McElroy O.S.C.* (ECF No. 10). On January 15, 2026, Judge McElroy issued a text order, finding good cause to extend the time for Mr. Persaud to effect service of process, and fixing March 10, 2026 as the date by which Mr. Persaud must serve the remaining unserved Defendants. *Text Order.* Judge McElroy warned Mr. Persaud that the failure to serve the unserved Defendants by March 10, 2026 "will result in the dismissal of any unserved defendants." *Id.*

Since then, Mr. Persaud has served only the four Defendants who are the movants in this motion. On March 17, 2026, Mr. Persaud filed a motion to extend time for service. *Pl.'s Mot. for Extension of Time to Complete Serv.* (ECF No. 23). Also

15

on March 17, 2026, Mr. Persaud filed a Notice of Service for fifteen Defendants, *Notice of Serv.* (ECF No. 26).  Finally, on March 17, 2026, Mr. Persaud filed a motion for a court order to require the United States Marshal to make service on the remaining Defendants.  *Pl.'s Mot. for Order Directing Serv. by U.S. Marshals* (ECF No. 24).

Regarding Mr. Persaud's request for an order directing service by the U.S. Marshal, Mr. Persaud relies on Rule 4(c)(3), which provides:

> *By a Marshal or Someone Specially Appointed.*  At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.

FED. R. CIV. P. 4(c)(3).  Mr. Persaud has neither sought nor been granted in forma pauperis status under 28 U.S.C. § 1915, and there is no allegation that he is a seaman under 28 U.S.C. § 1916.

To obtain in forma pauperis status, Mr. Persaud must have "submit[ed] an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.  Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress."  28 U.S.C. § 1915(a).  Mr. Persaud's assertion that he "lacks the financial and logistical ability to complete service without assistance" falls short of the statutory requirement of § 1915(a).  *See Smith v. Krupp*, 646 F. Supp. 3d 193, 197 (D. Mass. 2022) (denying a motion for service by Marshal because there was no statutory basis for the Marshal to serve process).

Indeed, Mr. Persaud paid the $405 filing fee. *See Compl.* (filing fee paid $405.00); *Kinsely v. Bondi*, No. 2:25-cv-00688-RFB-MDC, 2025 U.S. Dist. LEXIS 138425, at *1 (D.C. Nev. July 21, 2015) ("Plaintiff paid the full filing fee; therefore, plaintiff is not proceeding in forma pauperis"); *Greenberg v. Martin*, No. 3:24-cv-01439, 2025 U.S. Dist. LEXIS 119516, at *5-6 (D. Tenn. June 24, 2025) ("With regard to Plaintiff's request for the U.S. Marshal Service to serve his complaint and summons, once Plaintiff paid the filing fee, by law he became responsible for effecting timely and proper service of process").

Even if the Court retains the discretion under Rule 4(c)(3) to order service, "[t]his discretion is exercised only in limited circumstances, such as when a law enforcement presence appears necessary or advisable to keep the peace or when a hostile defendant threatens injury to the process server." *White v. King Cnty. Sheriff's Office*, No. 2:24-cv-00618-JHC, 2024 U.S. Dist. LEXIS 106368, at *2-3 (W.D. Wash. June 14, 2024) (quoting *Chan v. Ryan*, No. 22-CV-01796-LK, 2023 U.S. Dist. LEXIS 7996, at *3 (W.D. Wash. Jan. 17, 2023)). Mr. Persaud has not claimed that a law enforcement presence is required or advisable to keep the peace or that one of the Defendants here has threatened injury to the process server.

Rule 4 was amended mainly to relieve the marshals from having to effect service in private actions. *Bax v. Exec. Off. for U.S. Att'ys*, 216 F.R.D. 4, 4 (D.C. Col. 2003); *Lovelace v. Acme Mkts., Inc.*, 820 F.2d 81, 83 (3d Cir. 1987) (quoting 128 CONG. REC. H9848-49 (daily ed. Dec. 15, 1982)); *see also Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1990) (noting that the legislative history of Rule 4 shows congressional

17

intent "to relieve the marshal of the duty of routine[] service" in private civil actions). Therefore, courts often require a showing that a non-IFP plaintiff attempted some form of proper service. *Bax*, 216 F.R.D. at 4; *Oliver v. City of Oceanside*, No. 16-cv-00565-BAS(JLB), 2016 U.S. Dist. LEXIS 86839, at *3 (S.D. Cal. July 1, 2016). Here, Mr. Persaud has made no such satisfactory showing.

On March 17, 2026, Mr. Persaud filed fifteen documents, each entitled Notice of Service, each naming a Defendant with a FedEx mailing slip, indicating that he placed them for FedEx delivery in March 2026. *Notice of Serv.*, Attachs. 1-15, *Proof of Serv.* If Mr. Persaud intended these documents to reflect compliance with Rule 4, they do not. Rule 4(d) allows a party to request that a potential defendant waive service of process, Fed. R. Civ. P. 4(d), and Rule 4 attached an exemplar of the waiver of service form the federal courts require, and these Proof of Service forms are not consistent with the waiver of service model forms. The Court does not strike these Proof of Service forms from the record, but they are not evidence of service of process under the Rules against the unserved Defendants in this case.

Finally, the Court will hold in abeyance for the moment, Mr. Persaud's March 17, 2026, motion for extension of time to complete service. As the remainder of the docket in this case reveals, the Court is giving Mr. Persaud an opportunity to amend his complaint to frame it properly. It makes more practical sense to rule on the motion for extension once the Court determines whether his lawsuit will pass muster, and, if so, to extend the time to serve the amended complaint and to allow him to properly serve a refined and compliant complaint.

The Court denies Mr. Persaud's motion for order directing service of process by U.S. Marshal, dismisses Mr. Persaud's notices of service, but only to the extent that he is requesting a court order concerning that filing and otherwise leaves the notices of service as filed, and the Court defers ruling on the motion for extension of time to complete service. On the last motion, the Court will rule on the motion after final resolution of the motion to dismiss as further described in this order.

### B.      Violations of Rules 8 & 10

Federal Rule of Civil Procedure 8(a)(2) provides:

> A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.

FED. R. CIV. P. 8(a). Federal Rule of Civil Procedure 10(b) provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).

Mr. Persaud's complaint violates both rules. Consisting of two-hundred-and-four pages, the complaint is a verbose, rambling, repetitive narrative, and does not begin to meet Rule 8(a)'s requirement of "a short and plain statement of the claim." FED. R. CIV. P. 8(a). It also clearly violates Rule 10(b) since Mr. Persaud makes almost no effort to "states [his] claims . . . in numbered paragraphs." FED. R. CIV. P. 10(b). The way Mr. Persaud has framed his complaint, it is unanswerable because the URI Defendants would not be able to identify what they are responding to in their answer.

When confronted with a complaint that violates Rules 8(a) and 10(b), as here, the choice of remedy rests with the trial court. *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2d Cir. 1943). Occasionally, a court will order the plaintiff to amend his complaint, if the deficiencies can be readily remedied, *see Amous v. Trustmark Nat'l Bank*, 195 F.R.D. 607, 609 (N.D. Miss. 2000), and will dismiss a complaint only after a plaintiff repeatedly fails to comply with the Rules. *See Brooks v. Complete Warehouse and Dist., LLC*, 708 F. App'x 282, 285 (7th Cir. 2017).

### C.    A Fanciful and Unwieldy Conspiracy

Mr. Persaud's complaint alleges a fanciful and unwieldy conspiracy among disparate elements of state and federal government in Rhode Island to harass and punish Mr. Persaud and his family. Although not the sole individual Mr. Persaud's complaint maligns, the most prominent and obvious example is his accusations against Chief Judge John McConnell of the United States District Court for the District of Rhode Island. The Court therefore reviews Mr. Persaud's allegations against Chief Judge McConnell as an example of how defamatory and untethered Mr. Persaud's conspiracy allegations are.

As noted earlier, Mr. Persaud has elected not to implead Chief Judge McConnell as a defendant because, he says, Judge McConnell has absolute judicial immunity; nevertheless, he has reported Chief Judge McConnell to the Department of Justice and to Congress. *Compl.* at 91.

Mr. Persaud starts out by effectively claiming that Chief Judge McConnell is at the center of a state-wide conspiracy against him and his family:

20

At its core, this case involves the willful and conspiratorial abuse of state power—and of the University of Rhode Island—to silence Dan Persaud using a militarized, excessive-force police raid coordinated by officials appointed by the Democratic Party, against the backdrop of gross judicial misconduct already perpetrated by Chief Judge John McConnell against the Persaud family. McConnell's pattern of bias and procedural impropriety in several cases has undermined the integrity of the federal bench. This misconduct has been further shielded by the calculated inaction of Rhode Island's Attorney General, Peter Neronha—a deeply corrupt public official who masquerades as a "crime fighter" while weaponizing prosecutorial discretion to obstruct accountability and shield political allies responsible for egregious civil rights violations. Together, these actors orchestrated a retaliatory campaign against an American for lawfully exercising his First Amendment rights, in brazen violation of constitutional protections and the rule of law.

*Compl.* at 10.

To support this extraordinary allegation, Mr. Persaud makes the following specific allegations against Chief Judge McConnell:

(1)    Chief Judge McConnell is "affiliated" with Magistrate Joseph P. Ippolito, who signed a legally deficient search warrant, authorizing the August 26, 2024 search of Mr. Persaud's home, and he described Magistrate Ippolito as "Judge McConnell's magistrate," and he claims that he has "reason to believe" and Magistrate Ippolito "is working in concert with Chief Judge McConnell." *Id.* at 20, 46, 122.

(2)    According to Mr. Persaud, Alyssa Boss, general counsel to URI, has systematically abused her position as the University's chief legal officer to facilitate, orchestrate, and perpetuate an institutional cover-up of discriminatory practices at URI, and Defendant Boss has leveraged her position to coordinate a sophisticated legal strategy with outside counsel Steven Richard, a partner at Nixon Peabody LLP—a firm with

21

documented connections to federal judges and close friendships with Chief Judge McConnell—to systematically obstruct legitimate discrimination claims and prevent their fair adjudication by misrepresenting facts in court.  Mr. Persaud claims Ms. Boss has systematically abused her position as the University's chief legal officer to facilitate, orchestrate, and perpetuate an institutional cover-up of discriminatory practices at URI.  As the principal legal advisor to URI's Board of Trustees and President, he argues Defendant Boss bears direct responsibility for the coordination and management of all legal issues affecting the University.  As Mr. Persaud sees it, despite her ethical and professional obligation to ensure institutional compliance with federal and state anti-discrimination laws, Defendant Boss has knowingly authorized, approved, and participated in the submission of false and misleading statements to federal and state courts, and has deliberately withheld material information from judicial proceedings in violation of Rule 3.3 of the Rules of Professional Conduct.  Mr. Persaud believes Defendant Boss has leveraged her position to coordinate a sophisticated legal strategy with outside counsel Steven Richard, a partner at Nixon Peabody LLP—a firm with documented connections to federal judges and close friendships with Chief Judge McConnell—to systematically obstruct legitimate discrimination claims and prevent their fair adjudication by misrepresenting facts in court.  *Id.* at 24.

(3) Mr. Persaud alleges URI and its attorneys routinely weaponize the Family Educational Rights and Privacy Act (FERPA) not to protect students, but to silence and terminate innocent professors and administrators, particularly Black and Brown faculty and staff, and Mr. Persaud says Chief Judge John McConnell, along with many other judges in Rhode Island, supported this legal absurdity to protect institutions backed by Peter Neronha and the Democratic Party for economic and political interests. *Id.* at 38.

(4) Professor Kwame Fosu of URI created the Diversity Think Tank to document, analyze, and expose entrenched liberal orthodoxy and institutional misconduct that violate constitutional principles of free expression and equal protection. Professor Fosu rejected a settlement of half a million dollars because he wanted to keep his case active and protect other employees, insisting on a full criminal investigation by the Department of Justice into the University of Rhode Island, Attorney General Peter Neronha, and the deeply compromised federal bench led by Chief Judge John McConnell. Louis Kwame Fosu's forthcoming complaint will detail an expansive conspiracy involving fraud, obstruction of justice, conspiracy to suborn perjury, and other violations—naming Nixon Peabody, General Counsel Alyssa Boss, Attorney General Peter Neronha, Chief Judge John McConnell, and other key actors involved in URI's scheme to fraudulently violate his

constitutional rights.    Mr. Persaud describes Professor Fosu's forthcoming complaint as detailing "a coordinated legal cartel organized to silence and intimidate Professor Fosu."  Mr. Persaud says that Chief Judge McConnel's "[f]inal act of betrayal to our U.S. Constitution" occurred when he "sealed all evidence of URI's material misrepresentations and blatant fraud in order to protect URI and his friend, Nixon Peabody's Steven Richard who is corrupt beyond measure." *Id.* at 42-44.

(5)    John M. Cicilline, Mr. Persaud says, was successfully prosecuted by the U.S. Attorney's Office in Massachusetts, resulting in federal convictions for obstruction of justice and fraud.  Mr. Persaud charges that even after Mr. Cicilline's federal convictions, "Chief Judge John McConnell—a personal and political ally of the Cicillines—allowed John Cicilline to retain his license to practice law in Rhode Island.  *Id.* at 46, 122.

(6)    Mr. Persaud claims that Attorney General Peter Neonha and Chief Judge John McConnell shields Marc Parlange, the President of URI, despite the fact that President Parlange has "established and maintained a de facto institutional policy of conducting pretextual investigations that systematically dismiss complaints from Black, Latino, South Asian, and other protected-class complainants." *Id.* at 46-48.

(7)   Mr. Persaud makes similar allegations against Margo Cook, the URI Board Chair, alleging that she established a de facto institutional policy of discrimination and bigotry, but that she has been untouchable "protected in the federal courts by Chief Judge John McConnell and by the State of Rhode Island through Attorney General Peter Neronha. *Id.* at 57-59.

(8)   Mr. Persaud describes Chief Judge John McConnell as a "glorified racketeer[] with [a] law degree[]." *Id.* at 90.

(9)   Mr. Persaud says that Chief Judge McConnell has a "documented history of knowingly committing malicious misconduct and patent judicial fraud, which has been covered up by other judges and shielded by his deeply corrupt friends in the Attorney General and U.S. Attorney offices." *Id.* at 91.

(10)   Mr. Persaud alleges that John McConnell's misconduct dates back to his time as a corrupt plaintiff attorney, fixing cases with judges and benefitting from protection by Sheldon Whitehouse, who claimed to be a crime-fighter, while openly enabling judicial corruption that favored political allies and plaintiff attorney like McConnell who donated to Democrats and President Obama. *Id.* at 92.

(11)   Mr. Persaud says that "the Persaud family does not enjoy the political protection or insider connections that shield powerful Democrats in Rhode Island. Persauds do not have friendships with Democratic elites,

25

nor do they know how—or whom—to bribe, unlike the McConnells, Neronhas, Whitehouses, and Cicillines of the state." *Id.* at 93.

(12) Mr. Persaud alleges that Chief Judge McConnell "deliberate[ly] abuse[d] . . . judicial authority" in his handling of a "**rigged case**" against the Persaud family and engaged in "not merely unethical" but "criminal" conduct. *Id.* at 95 (emphasis in original).

(13) Mr. Persaud maintains that he suffered a massive heart attack "directly caused by the extreme stress stemming from two concurrent legal cases—both rooted in egregious violations of his constitutional rights by the Rhode Island judiciary, particularly under the influence of Chief Judge John McConnell." *Id.* at 95.

(14) Mr. Persaud alleges that "Judge McConnell's courtroom is epitome of corruption, with zero credibility," that he "is now forced to fight the most corrupt public university in Rhode Island, in a federal courtroom presided over by the most corrupt federal judge in Rhode Island, Chief Judge John McConnell who must be arrested for his prolonged fraud," and that Chief Judge McConnell "has established the culture of fraud in the United District Court with bogus ex parte ruling to his protect friends and associates. *Id.* at 96-97, 124.

These accusations against Chief Judge McConnell are mirrored in various ways against other Defendants and persons unnamed as Defendants in the rest of the complaint. Essentially Mr. Persaud describes virtually every Defendant and

26

numerous other individuals as "corrupt," acting "corruptly," or being guilty of "corruption."  In addition to Chief Judge McConnell, Mr. Persaud labels as corrupt: URI, Rhode Island State Police, the Rhode Island judiciary, Rhode Island Attorney General Peter Neronha, Magistrate Joseph P. Ippolito, the Rhode Island Democratic Party, Nixon Peabody Attorney Steven Richard, leaders of the Rhode Island Commission for Human Rights, URI Assistant Vice President for DEI Michelle Fontes, URI Psychology Department Chair Marc Robbins, URI Dean Jeanette Riley, URI Vice President of Human Resources Laura Kenerson, URI Police Chief Michael Jagoda, United States Senator Sheldon Whitehouse, former Congressman David Cicilline, Attorney Carly Beauvais Iafrate, Attorney William O'Gara, NAACP Director Jim Vincent, URI former CIO Karlis Kaugars, URI President Marc Parlange, URI General Counsel Alyssa Boss, URI EEO Director Dorca Smalley, Gabriele Fariello, Michael Motta, Bob Viens, and Robert Britto-Oliveira.  *Compl.* at 1-205.  By the Court's count, Mr. Persaud used variations of corrupt in the complaint to describe the Defendants more than one hundred and fifty times.

Mr. Persaud's allegations in his civil complaint are absolutely privileged under Rhode Island law.  In *Evoqua Water Technologies. LLC v. Moriarty*, 334 A.3d 429, 434 (R.I. 2025), the Supreme Court of Rhode Island wrote that it adopted the litigation privilege in 1956 and in *Vieira v. Meredith*, 84 R.I. 299, 301, 123 A.2d 743, 744 (1956), the Rhode Island Supreme Court recognized that "libelous matter in pleadings filed in judicial proceedings are absolutely privileged where the statements are material, pertinent or relevant to the issues therein."  The United States District

Court for Rhode Island has applied Rhode Island state law to this litigation privilege and has accorded allegations in a complaint an absolute privilege. *AAA Wholesalers Distrib., LLC v. Tropical Cheese Indus.*, C.A. No. 18-542-WES, 2020 U.S. Dist. LEXIS 18899, at *4 (D.R.I. Feb. 5, 2020).

But, as noted earlier, the law allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The conspiracy allegations against the wide range of state and federal officials are preposterous, fanciful, and malicious. The Court would simply strike the scandalous allegations from the complaint, except the conspiratorial allegations are so interwoven into what Mr. Persaud describes as the "core" of his case, *Compl.* at 1, that the Court cannot strike the improper, hyperbolic language in the complaint without dismissing the complaint to the extent it relies on his wild and unsupportable conspiracy theory.

In addition, from the Court's perspective, despite its length, Mr. Persaud's complaint suffers from a noticeable lack of factual specificity regarding his conspiracy allegation, the most serious and farfetched of his allegations. Instead of facts justifying his allegations of conspiracy, Mr. Persaud has engaged in name-calling, labeling each Defendant and others as bullies, harassers, embezzlers, and/or fraudsters. More worrisome is that Mr. Persaud is accusing some of the Defendants and others of committing federal crimes. Finally, Mr. Persaud's complaint is replete with references to third parties, some as victims and others as perpetrators.

Once the offending language is eliminated, the Court has concluded that the following counts cannot stand and must be dismissed: Count One, Violation of Plaintiff's First Amendment Right to Freedom of Speech, Count Three, Retaliation Against Witness in a Federal Proceeding, Count Five, Violation of Plaintiff's Fourteen Amendment Right to Procedural Due Process, Count Fourteen, Conspiracy to Suborn Perjury, Count Fifteen, Conspiracy to Interfere with Civil Rights, Count Seventeen, Conspiracy Against Rights, Count Eighteen, Conspiracy to Commit Offense Against or Defraud the United States.

### D.    Warrant Allegations

As discussed, Mr. Persaud focuses significant indignation against the warranted search of his residence on August 26, 2024. *Compl.* 17, 19, 113-116, 185-200. Although many of his claims are wound up in Mr. Persaud's far flung conspiracy, Count Two, Conspiracy to Violate Dan Persaud's Fourth Amendment Rights, Count Ninteen, Hate Crime Motivated by Race and Retaliation for First Amendment Speech, Count Twenty, Fraud and Deceit, and Count Twenty One, Civil RICO, involve an allegedly defective warrant.

The Court dismisses Count Two, Conspiracy to Violate Dan Persaud's Fourth Amendment Rights, Count Ninteen, Hate Crime Motivated by Race and Retaliation for First Amendment Speech, Count Twenty, Fraud and Deceit, and Count Twenty One, Civil RICO for two reasons: (1) first, because they rely upon the allegations of conspiracy that the Court has ruled violate Rule 12(f), including the malicious and unsupported allegation that Chief Judge McConnell had influenced Magistrate Ippolito to issue the search warrant, and (2) the allegations do not survive analysis.

29

The Court does not further discuss the first reason. Regarding the second reason, once the untenable accusations are eliminated, Rhode Island law enforcement executed a search warrant duly approved by a state magistrate apparently to recover URI property that Mr. Persaud had improperly removed from URI and placed in his home. Although Mr. Persaud challenges the value of the equipment, he does not allege that he did not have the URI equipment in his home. Finally, to the extent that Mr. Persaud is claiming damages due to an alleged assault against his mother, Mr. Persaud does not have standing to raise tort claims on behalf of his mother. In short, for the reasons the Court has described, the Court dismisses Count Two, Conspiracy to Violate Dan Persaud's Fourth Amendment Rights, Count Ninteen, Hate Crime Motivated by Race and Retaliation for First Amendment Speech, Count Twenty, Fraud and Deceit, and Count Twenty One, Civil RICO.

### E.    Moving Forward

When Mr. Persaud's conspiratorial allegations are removed from the complaint, what is left is a claim that URI discriminated against him as a Black-South Asia male and for speaking out against URI administration. Mr. Persaud alleges that he was hired on July 1, 2012 to work in the Media and Technology Services Department as a Senior Information Technologist at URI. He claims that although he was better educated, less educated white males were hired to supervise him, that these white males were promoted and he was not, and that he did not receive any pay increases during his tenure at URI. From the Court's perspective, Mr. Persaud has stated potential claims against URI under Count Four, Violation of Plaintiff's Fourteen Amendment Right to Equal Protection, Count Six, Defamation,

Count Seven, Rhode Island Whistleblowers' Protection Act, Count Eight, Title VI Violations: Discrimination in Federally Funded Programs, Count Nine, Title VII Violations: Discrimination in Federally Funded Programs, Count Ten, Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, Count Eleven, Retaliation in Violation of R.I. Gen. Laws § 28-50-3(4) and Title VII, Count Twelve, Violation of the Rhode Island Civil Rights Act § 42-112-1, and Count Thirteen, Discrimination in Violation of the Rhode Island Fair Employment Practices Act, Count Sixteen, Violation of Dan Persaud's Equal Rights Under the Law: 42 U.S.C. § 1981.  Whether Mr. Persaud may implead such a broad range of URI-affiliated individuals, including for example the Chair of the Board of Trustees, remains to be seen; however, rather than acting sua sponte, the Court has resolved that it would be wiser to wait to address any such issues.

However, to proceed with these claims, the Court is requiring Mr. Persaud to file an amended complaint, conforming to the requirements of Rules 8(a)(2) and 10(b) and eliminating all conspiracy allegations.  Once Mr. Persaud files his amended complaint, limited to the approved counts, as renumbered, the Court will impose a strict service requirement on Mr. Persaud to avoid another extended period in which Mr. Persaud fails to serve the remaining Defendants.

Because the Court dismisses Mr. Persaud's conspiracy claims, there is no claim against many of the yet-served Defendants and thus the Court concludes, sua sponte, that the complaint is dismissed with respect to all non-URI Defendants, namely, Colonel Darnell Weaver, Rhode Island State Police, Rhode Island State Police Chief,

31

John Susa, Chair of the Rhode Island Commission for Human Rights, Michael Évora, Executive Director of the Rhode Island Commission for Human Rights, Daniel McKee, Governor of the state of Rhode Island, the state of Rhode Island, and Benita Brahmbhatt, Attorney at the U.S. Department of Education.  Accordingly, Mr. Persaud is not required to serve these yet-served Defendants.

## VI.   CONCLUSION

The Court GRANTS the Defendants' Motion to Dismiss (ECF No. 30) as to the moving Defendants and sua sponte DISMISSES as to the remaining unserved Defendants Count One, Violation of Plaintiff's First Amendment Right to Freedom of Speech; Count Two, Conspiracy to Violate Plaintiff's Fourth Amendment rights; Count Three, Retaliation Against Witness in a Federal Proceeding; Count Five, Violation of Plaintiff's Fourteen Amendment Right to Procedural Due Process; Count Fourteen, Conspiracy to Suborn Perjury; Count Fifteen, Conspiracy to Interfere with Civil Rights; Count Seventeen, Conspiracy Against Rights; Count Eighteen, Conspiracy to Commit Offense Against or Defraud the United States; Count Ninteen, Hate Crime Motivated by Race and Retaliation for First Amendment Speech; Count Twenty, Fraud and Deceit; and Count Twenty One, Civil RICO.

With the dismissal of these unfounded conspiracy allegations and counts, the only remaining potential defendants are those affiliated with URI or with Mr. Persaud's employment-based claims.  The Court therefore DISMISSES Colonel Darnell Weaver, Rhode Island State Police, Rhode Island State Police Chief, John Susa, Chair of the Rhode Island Commission for Human Rights, Michael Évora, Executive Director of the Rhode Island Commission for Human Rights, Daniel

32

McKee, Governor of the state of Rhode Island, the state of Rhode Island, and Benita Brahmbhatt, Attorney at the U.S. Department of Education.

The Court DENIES the Defendants' Motion to Dismiss (ECF No. 30) as to Count Four, Violation of Plaintiff's Fourteen Amendment Right to Equal Protection; Count Six, Defamation; Count Seven, Rhode Island Whistleblowers' Protection Act; Count Eight, Title VI Violations: Discrimination in Federally Funded Programs; Count Nine, Title VII Violations: Discrimination in Federally Funded Programs; Count Ten, Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964; Count Eleven, Retaliation in Violation of R.I. Gen. Laws § 28-50-3(4) and Title VII; Count Twelve, Violation of the Rhode Island Civil Rights Act § 42-112-1; Count Thirteen, Discrimination in Violation of the Rhode Island Fair Employment Practices Act; and Count Sixteen, Violation of Dan Persaud's Equal Rights Under the Law: 42 U.S.C. § 1981.

The Court ORDERS the Plaintiff to file an amended complaint eliminating all allegations of a conspiracy and fully complying with Rules 8(a)(2) and 10(b), setting forth each factual allegation in a separately numbered paragraph within two weeks of the date of this order.  Once Mr. Persaud refiles his complaint, the Defendants may, if they wish, file a new motion to dismiss based on the newly framed allegations.

Finally, the Court DEFERS ruling on Plaintiff's Motion for Extension of Time to Complete Service (ECF No. 23) until Mr. Persaud has filed an amended complaint. The Court DENIES Plaintiff's Motion for Order Directing Service of Process by U.S. Marshal (ECF No. 24), and DISMISSES Plaintiff's Notices of Service (ECF No. 26),

but only to the extent that he is requesting a court order concerning that filing and otherwise leaves the notices of service as filed.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2026